UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 21-5148
(C.A. No. 15-0459)

RICA GATORE, *et al.*,                                          *Appellants*,

  v.

U.S. DEPARTMENT OF HOMELAND SECURITY,        *Appellee*.

## MOTION FOR SUMMARY AFFIRMANCE

Appellees respectfully move for summary affirmance of the district court's orders denying motions for certification of a class of thousands of individuals who had previously requested a certain type of record about herself or himself under the Freedom of Information Act ("FOIA"). Summary disposition is appropriate because "the merits of this appeal are so clear as to make summary affirmance proper," *Walker v. Washington*, 627 F.2d 541, 545 (D.C. Cir. 1980), and "no benefit will be gained from further briefing and argument of the issues presented," *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297–98 (D.C. Cir. 1987). The district court acted well within its discretion in denying Plaintiffs' motions for class certification, and summary affirmance is warranted.

## BACKGROUND

This case has long procedural history. Eight plaintiffs brought the initial complaint in March 2015, R.1, and a ninth joined by amendment in January 2017, R.57. Eight of the nine plaintiffs are individuals who claimed that U.S. Citizenship and Immigration Services ("USCIS") improperly withheld information in response to their respective FOIA requests seeking an "assessment to refer" from each requester's immigration file. R.60 ¶¶ 10, 37, 40, 43, 46, 49, 52, 73. An assessment to refer is an asylum officer's nonfinal recommendation that an applicant for asylum should be placed in removal proceedings rather than granted asylum. R.22-1 ¶ 4. USCIS had withheld Plaintiffs' assessments in full as predecisional and deliberative pursuant to FOIA Exemption 5. The individual plaintiffs claimed that portions of each assessment included nondeliberative factual material that should have been segregated and released. *Gatore v. Dep't of Homeland Sec.* ("*Gatore I*"), 177 F. Supp. 3d 46, 54 (D.D.C. 2016).

The individual plaintiffs also sought to certify an expansive class of "all persons who, since March 30, 2009, have made, or will make during the pendency of this lawsuit, a FOIA request for the Assessment of their

2

asylum officer, but were provided no portion of the Assessment." R.15 at 1. The motion sought certification under Federal Rule of Civil Procedure 23(b)(2). *Id.* at 18. The district court held the motion in abeyance pending the resolution of summary judgment motions. *Gatore I*, 177 F. Supp. 3d at 53 n.3.

The ninth plaintiff, Catholic Charities (which is not a party to this appeal), brought two separate claims pertinent to the context of class consideration. First, Catholic Charities challenged USCIS's alleged "policy and practice of not even attempting to determine if there are reasonably segregable portions of an Assessment." R.60 ¶¶ 25, 59. Second, it alleged that USCIS "provided nothing" in response to its FOIA request for records about how USCIS processed FOIA requests for assessments to refer. *Id.* ¶ 61. On June 24, 2015, Catholic Charities moved for partial summary judgment on the latter claim. R.17. Defendant opposed the motion and filed its own motion for summary judgment on all the claims in the case. R.22, 23.

In the first of several decisions, this one denying the summary judgment motions (R.40), the district court noted that USCIS had subsequently provided information responsive to Catholic Charities'

request for information about its FOIA processing. *Gatore I*, 177 F. Supp. 3d at 54. The district court also indicated that it "might be inclined to rule in favor of the defendant" by finding that the assessments were properly withheld in full, but for certain concerns about the declaration's categorical discission of the assessments instead of individual justifications. *Id.* at 54.

After USCIS provided a supplemental declaration describing and analyzing the segregability of each of the individual plaintiffs' assessments, R.44, and renewed its motion for summary judgment (R.77, 78, 82[1]), the district court again found USCIS's supplemental declaration insufficiently detailed and directed Defendant to submit the relevant assessments for inspection in camera. *Gatore v. Dep't of Homeland Sec.* ("*Gatore IV*"), 292 F. Supp. 3d 486, 495 (D.D.C. 2018). After reviewing the assessments, the district court concluded that "a number of factual

---

[1]    Catholic Charities also later renewed its motion for partial summary judgment to demand that USCIS release a particular record about FOIA processing that had been referenced in USCIS's supplemental declaration. R.46. The district court granted the motion as unopposed. *Gatore v. Dep't of Homeland Sec.* ("*Gatore II*"), Civ. A. No. 15-0459, 2017 WL 7803776, at *3 (D.D.C. Feb. 3, 2017); *see also Gatore v. Dep't of Homeland Sec.* ("*Gatore III*"), 286 F. Supp. 3d 25, 51–52 (D.D.C. 2017) (granting request for attorney's fees).

introductory paragraphs in each assessment do not qualify for protection under Exemption 5." *Gatore v. Dep't of Homeland Sec.* ("*Gatore V*"), 327 F. Supp. 3d 76, 88 (D.D.C. 2018). It ordered release of specific paragraphs in each of the assessments and denied Defendant's motion for summary judgment on Catholic Charities' policy claim. *Id.* at 95; R.109 at 1–2.

Simultaneously, the district court denied the individual plaintiffs' motion to certify a class, holding that they could not represent a class consisting of individuals who "were provided no portion of the [a]ssessment," because each of them had in fact—prior to the district court's opinion—received one to three paragraphs of their assessment from USCIS. *Gatore V*, 327 F. Supp. 3d at 103; R. 110 at 35–38 (Ex. 1). Within a week, Plaintiffs filed three new motions. The individual plaintiffs moved again to certify the same class that had already been rejected, but this time under Rule 23(b)(3) rather than 23(b)(2). R.113 at 1, 10. Catholic Charities moved for the first time to represent a class in its own respect. R.112. And Catholic Charities moved for the first time for summary judgment on its policy claim. R.111. Weeks later, Plaintiffs filed a fourth motion, seeking leave to amend their complaint to add

57 new individual plaintiffs, all of whom claimed that USCIS failed to release segregable, nondeliberative factual material from their assessments to refer. R.115.

Defendant opposed all four motions and moved to dismiss as moot Catholic Charities' policy claim. R.126. Concerning the motion to amend, Defendant demonstrated that fifteen of the proposed new plaintiffs had not exhausted administrative remedies, one was time barred, one had already litigated his claim to judgment, and one had entered a settlement agreement resolving his claim. *Id.* at 9–14. Defendant also argued that amendment—requested nearly five years into the litigation—was untimely. *Id.* at 8–9.

Regarding the policy claim, USCIS explained that, in December 2017, it had issued new guidance to its FOIA processors stating that assessments to refer generally contain both factual and deliberative information and that the former should be segregated and released. *Id.* at 5–6; R.126-1 ¶ 29 & Attach. 18.

After the motions were briefed, the district court referred the case to mediation at the parties' request and denied all pending motions without prejudice. R.135, 137. After unsuccessful mediation, the district

court reinstated the motions, R.145, and held a hearing. Because Plaintiffs' counsel conceded at the hearing that many of the proposed new plaintiffs had not exhausted remedies or had already litigated or settled their claims, the court denied the motion to amend without prejudice and ordered that Plaintiffs renew their motion and "include only those additional plaintiffs whom counsel has a good-faith basis to believe can maintain a claim." R.148 at 1. The district court also denied as moot Catholic Charities' motions because Catholic Charities had retained new counsel and expressed its desire to withdraw from the case and filed a stipulation of dismissal. *Id.*; R.151.

Plaintiffs filed a renewed motion to amend to add thirty-eight new plaintiffs purporting to seek any factual portions of their respective assessments to refer, R.153, as well as a fourth motion for class certification (again invoking Rule 23(b)(3)), seeking to certify the same class as before but with only the proposed new plaintiffs (who were not yet parties) serving as class representatives, R.150, 154. In light of this new, duplicative motion, the district court denied as moot the individual plaintiffs' other pending motion for class certification. R.156. Plaintiffs do not appear to appeal that denial.

Defendant opposed both the motion to amend and the fourth motion to certify a class. R.161. As to the former, Defendant noted that—despite the court's admonition—several of the new plaintiffs had not exhausted administrative remedies, several had already received segregable factual portions of their assessments before suing, and one plaintiff did not even have an assessment to refer in his file. R.161-1 ¶¶ 6–13. Of the remaining proposed new Plaintiffs, USCIS, in accordance with the new guidance issued in December 2017, promptly released segregable factual portions of their assessments to refer shortly after Plaintiffs filed the motion to amend, rendering their claims moot. *Id.* ¶ 14.

On April 30, 2021, the district court held a hearing on the pending motions where Plaintiffs' counsel acknowledged the mootness of the claims of the proposed new plaintiffs but contended that the district court should nevertheless address Plaintiffs' certification motion with the proposed plaintiffs as representatives. Ex. 2, Tr. of Mots. Hr'g at 2:23–3:3 (Apr. 30, 2021).[2] The district court found that the commonality and

---

[2]      Undersigned counsel's copies of the transcripts (Exhibits 2 and 3) appear to have been inadvertently destroyed. Counsel is in the process of obtaining replacement copies and will file them with the Court when they are available.

typicality requirements for class certification were not met because—as the district courts' own experience with the record showed—each assessment requires an individualized examination to determine whether any non-exempt factual information is segregable and, if so, how much may be released. *Id.* at 7:18–8:6. It therefore denied Plaintiffs' motions to amend and for class certification. After Plaintiffs acknowledged that their extant amended complaint was also moot and should be dismissed, R.172, the district court dismissed the complaint and closed the case, R.173. This appeal followed.

## ARGUMENT

This appeal appears primarily to challenge two orders: the district court's August 2018 order denying Plaintiffs' first motion for class certification under Rule 23(b)(2) and its May 2021 order denying the fourth motion for class certification under Rule 23(b)(3).[3] This Court

---

[3]    Plaintiffs' certificate of rulings under review omits the August 2018 order while also indicating an intent to challenge "each time the district court denied class certification." Defendant therefore addresses it in this motion for summary affirmance. Notwithstanding the quoted language, Defendant does not construe the appeal as challenging the unlisted district court orders denying the second and third motions for class certification, one of which was denied as superseded by the fourth motion without objection from Plaintiffs and the other of which was brought by

reviews orders denying class certification for abuse of discretion. *DL v. District of Columbia*, 860 F.3d 713, 724 (D.C. Cir. 2017).

## I.     This case does not meet the criteria to proceed as a class action.

The class proposed in the first and fourth motions was identical in its composition and fails to meet the criteria in Rule 23. "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). To obtain class certification, a plaintiff must show that the proposed class satisfies all four requirements of Rule 23(a) and one of the three requirements of Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

### A.     Rule 23(a)

Rule 23(a) imposes four requirements for class actions. Plaintiffs' proposed class of FOIA requesters—each having sought his or her own personal assessment to refer—falls far short of two of them: commonality and typicality. Fed. R. Civ. P. 23(a).

---

Catholic Charities, which stipulated to the dismissal of its claims and did not join this appeal.

Commonality requires that plaintiffs establish "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement means that class claims must depend on "a common contention [that] is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. "This does not mean merely that [class members] have all suffered a violation of the same provision of law," for "[w]hat matters to class certification . . . is not the raising of common 'questions,' . . . but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (internal quotation marks omitted) (emphasis in original).

Similarly, class plaintiffs must demonstrate typicality. Fed. R. Civ. P. 23(a)(3). This means that the representative plaintiffs must "possess the same interest and suffer the same injury" as the other class members. *See Falcon*, 457 U.S. at 156 (internal quotation marks and citations omitted).

Plaintiffs claim that the members of the class should have received any factual material contained in their assessments to refer and seek a

court order requiring USCIS to release that material. R.153-1 ¶ 65. But the question of what—if any—factual material must be released in each purported class member's individualized assessment cannot be resolved through the adjudication of the class representatives' claims about their own, different assessments. Each assessment to refer is unique to the asylum applicant; some may have three paragraphs of segregable factual information, some may have seven-and-a-half such paragraphs, and some may have no segregable factual information at all. Consequently, each assessment would require specific and independent consideration of whether each contains any segregable material that should be released to the requestor.

Indeed, in these proceedings, the district court did exactly that. It held that adjudication of the individual plaintiffs' claims necessitated detailed and specific descriptions of each of their assessments to refer, at a minimum, if not review of the assessments themselves. *Gatore I*, 177 F. Supp. 3d at 53; *Gatore IV*, 292 F. Supp. 3d at 495. Just as the district court was unable to rely on a single assessment or description to adjudicate the nine individual plaintiffs' claims, so too would the district court be unable to rely on a handful of plaintiffs' claims to determine

whether and how much information should be disclosed from the hundreds of thousands of other assessments to refer of putative class members. Given this discrepancy, the named plaintiffs lack the commonality and typicality necessary to meet the requirements of Rule 23(a).

### B.    Rule 23(b)(2), (3)

Plaintiffs' first motion for class certification invoked Rule 23(b)(2), and the fourth motion sought certification of the same class (but represented only by the proposed new plaintiffs) under Rule 23(b)(3). Plaintiffs do not satisfy either provision.

Start with Rule 23(b)(2), the basis for Plaintiffs' first (and only timely) motion for class certification. That provision sets forth two requirements: (1) the party opposing the class must have "acted, refused to act, or failed to perform a legal duty on grounds generally applicable to all class members," and (2) "final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, must be appropriate." Fed. R. Civ. P. 23(b)(2); 2 William B. Rubenstein, *Newberg on Class Actions* ("*Newberg*") § 4:26 (5th ed. 2013).

With these requirements, Rule 23(b)(2) allows class treatment "only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Wal-Mart*, 564 U.S at 360 (emphasis in original). "[T]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Id.* (internal quotation marks omitted).

The same disparities preventing Plaintiffs from satisfying the commonality and typicality requirements of Rule 23(a) also hinder their satisfying the requirements of Rule 23(b)(2). The district court could not craft singular injunctive relief settling the legality of USCIS's withholdings in the likely hundreds of thousands of assessments to refer. The granularity of the district court's remedial order in this case shows that to be irrefutably true. As noted, fashioning injunctive relief for the eight individual plaintiffs, the district court reviewed each individual assessment to refer and issued a detailed order addressing each

14

document and specifying precisely what must be segregated and released. For example, the district court concluded that six paragraphs should be segregated and released from Gatore's assessment, five paragraphs from Al Timemy's assessment, four paragraphs from Ayessa's assessment, and ten paragraphs from Shyaka's assessment. R.109. Nothing about the specific relief afforded any one plaintiff resolves how many paragraphs (if any) should be released from the likely hundreds of thousands of unique assessments to refer that are the subject of plaintiffs' purported class claims.

Plaintiffs fourth (untimely) motion tried a new tack, this time seeking (on behalf of the not-yet-added proposed plaintiffs) certification of a class under Rule 23(b)(3). This was an odd choice. Classes seeking injunctive relief, like the one at issue here, are typically certified, where appropriate, under Rule 23(b)(2), whereas "Rule 23(b)(3) class actions are money damages class actions." *Newberg* § 4:47 (5th ed. 2020). In any event, to certify a class under Rule 23(b)(3), the district court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class

action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"The predominance requirement is meant to assess whether the class's interests are 'sufficiently cohesive to warrant adjudication by representation.'" *Newberg* § 4.49 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Although this inquiry is related to Rule 23(a)'s commonality requirement, "[i]f anything, Rule 23(b)(3)'s predominance criterion is even more demanding." *Comcast Corp. v. Behrand*, 569 U.S. 27, 34 (2013). "[T]he predominance analysis logically entails two distinct steps—the characterization step and the weighing step." *Newberg* § 4:50. First, the court must "characterize the issues in the case as common or individual . . . primarily based on the nature of the evidence." *Id.* "Second, the district court must "compare the issues subject to common proof against the issues subject solely to individualized proof to assess whether the common issues predominate." *Id.*

For the reasons discussed above in connection with commonality, typicality, and the requirements of Rule 23(b)(2), the central issues in this case are highly individualized. The sole question is how USCIS should

treat each class member's unique, individualized assessment for purposes of FOIA withholdings. Accordingly, there are no common issues underlying the class members' claims that predominate over any individualized issues.

Next, Rule 23(b)(3)'s superiority requirement is intended to ensure that resolution by class action will "achieve economies of time, effort, and expense and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable consequences." *Amchem*, 521 U.S. at 615. Here, a class action is not the superior means of resolving the proposed class members' individualized claims. Plaintiffs sought to certify a class consisting of "all persons who, since March 30, 2009, have made, or will make during the pendency of this lawsuit, a FOIA request for the Assessment of their asylum officer, but were provided no portion of the Assessment." R.112 at 1; R.113 at 1. But such class claims are unnecessary. Because USCIS issued revised guidance to FOIA processors that they should generally segregate and release the factual content of assessments to refer, any putative class member wishing to have her assessment re-processed

pursuant to that guidance can simply resubmit a FOIA request and receive any sergegable facts. R.126 at 5–6; R.126-1 ¶ 29, Attach. 18

On the other hand, the broad class relief sought would have severe adverse consequences because it would require USCIS to divert significant resources to reprocessing old FOIA requests for persons who may no longer have any interest in the assessment to refer generally or the withheld information in particular. As previously reported, USCIS receives more FOIA requests than any other government agency. R.126-1 ¶ 33. Since fiscal year 2011, it has consistently received well over 100,000 requests per year and, as of fiscal year 2017, that number has grown to nearly 200,000 requests. *Id.* To even ascertain which requestors are in Plaintiffs' proposed class, USCIS would be required to manually review (electronic searching is impossible) over 1.1 million requests to determine which of them sought an assessment to refer or accompanying records. *Id.* ¶¶ 35–37. On average, over 95% of the requests received by USCIS are from individuals seeking their entire immigration file, each of which generally involves hundreds to thousands of pages of responsive records. *Id.* ¶¶ 35, 38.

To review all those requests and the responsive pages to determine whether the requestors fall into Plaintiffs' proposed class would take years and would put an extremely onerous, if not crippling, strain on USCIS's FOIA current operations to the great detriment of current requestors. *Id.* ¶ 35. For this reason, class wide relief, even if possible, would not be superior to aggrieved requesters simply resubmitting their FOIA requests and having them reprocessed under the current guidance.

## II.    Plaintiffs' claims became moot before any class was certified.

With respect to both the first and fourth motions for class certification, the proposed class members no longer had a live controversy through which to represent the class at the time that they sought certification. The mootness doctrine applies in the context of class actions. *See Sosna v. Iowa*, 419 U.S. 393, 402–03 (1975). While the Supreme Court has held that the mooting of a purported class representative's claim *after* a class is certified will not moot a class action as a whole, *id.*, a class may not be certified where a purported representative's claim becomes moot *before* the class is certified, *see, e.g., Anderson v. CNH U.S. Pension Plan*, 515 F.3d 823, 826 (8th Cir. 2008) ("In a class action, dismissal on mootness grounds normally is required

19

when the named plaintiffs' claims become moot prior to a decision on class certification."); *Cruz v. Farquharson*, 252 F.3d 530, 533–34 (1st Cir. 2001) ("Despite the fact that a case is brought as a putative class action, it ordinarily must be dismissed as moot if no decision on class certification has occurred by the time that the individual claims of all named plaintiffs have been fully resolved.") (citing *Arnold v. Panora*, 593 F.2d 161, 164 (1st Cir. 1979)); *Comer v. Cisneros*, 37 F.3d 775, 798 (2d Cir. 1994) ("[I]n general, if the claims of the named plaintiffs become moot prior to class certification, the entire action becomes moot.") (citing *Bd. of School Comm'rs of City of Indianapolis v. Jacobs*, 420 U.S. 128, 129–30 (1975) (*per curiam*)); *Rocky v. King*, 900 F.2d 864, 869 (5th Cir. 1990) ("This Court generally has concurred with the proposition that a purported class action is moot where the named plaintiff's individual claim became moot before class certification."); *Tucker v. Phyfer*, 819 F.2d 1030, 1033 (11th Cir. 1987) ("In a class action, the claim of the named plaintiff, who seeks to represent the class, must be live both at the time he brings suit and when the district court determines whether to certify the putative class. If the plaintiff's claim is not live, the court lacks a justiciable controversy and must dismiss the claim as moot.").

As explained, USCIS had reprocessed the claims of all the proposed new plaintiffs and provided them with any segregable factual portions of their assessments to refer before their motions for class certification were adjudicated. Indeed, with respect to the fourth motion for class certification, the proposed class representatives had not even been accepted as plaintiffs to the case at the time the certification motion was decided, and they could not have been accepted al plaintiffs given that their claims were moot, as Plaintiffs' counsel conceded. Ex. 2, Tr. of Mots. Hr'g at 2:23–3:3. Based on the pre-certification mooting of Plaintiffs' claims, the Court should affirm denial of class certification.

## III.   The fourth motion for class certification was untimely.

Plaintiffs filed their fourth motion to certify a class on October 27, 2020, R.150—over five and a half years after the initial complaint was submitted. That is too late. The district court's Local Civil Rule 23.1(b) requires parties purporting to serve as class representatives to move for class certification "within 90 days after the filing of a complaint in a case sought to be maintained as a class action." The deadline is measured from the filing of the initial complaint containing class allegations, not from any amended pleadings. *See Howard v. Gutierrez*, 474 F. Supp. 2d 41, 53

(D.D.C. 2007) ("[T]he most natural reading of the rule requires the filing of a certification motion within ninety days of the first complaint that states class allegations—in this case, the initial complaint.").[4]

Local Rule 23.1(b) is strictly applied. *See Black Panther Party v. Smith*, 661 F.2d 1243, 1279 (D.C. Cir. 1981) ("[S]trict enforcement of Local Rule 1–13(b) [Local Rule 23.1's predecessor] implements the policy of Rule 23(c)(1) . . ., which states that the status of class actions should be determined quickly."); *Batson v. Powell*, 912 F. Supp. 565, 570 (D.D.C. 1996) ("As this Court has made clear, the 90–day limit [the Local Rules] has been strictly enforced in this Circuit." (internal quotation marks omitted)). Thus, where plaintiffs fail to timely move for certification, they may not pursue a class action. *Howard*, 474 F. Supp. 2d at 53–57 (granting motion to strike class allegations where plaintiffs did not timely move to extend their time to move for certification); *Thomas v. Knight*, 257 F. Supp. 2d 86, 91 n.5 (D.D.C. 2003) (denying motion for class certification for failure to comply with LCvR 23.1(b)); *Coffin v. Sec'y of*

---

[4]    This circuit, as with every other circuit, defers to the district court's interpretation of its own local rules. *See Jud. Watch, Inc. v. Dep't of Just.*, 813 F.3d 380, 384 (D.C. Cir. 2016). Defendant therefor relies on district court opinions applying this rule.

*Health, Ed. & Welfare*, 400 F. Supp. 953, 956–57 & n.18 (D.D.C. 1975) (denying motion for class certification filed seven months after initial complaint).

The initial complaint in this case, filed on March 31, 2015, was the first pleading with class allegations. R.1 ¶¶ 63, et seq. As such, certification should have been sought by June 29, 2015. Instead, the fourth motion for certification was filed on October 27, 2020, R.154—about five and a half years too late. Accordingly, the motion for class certification was untimely and its denial should be affirmed.

## IV.    Plaintiffs forfeited challenges to the district court's other orders.

Plaintiffs' July 16, 2021, certificate of rulings under review ostensibly challenges the district court's oral order during a September 13, 2018, status conference continuing an abeyance on various motions, including Plaintiffs' second and third motions for class certification, while the parties engaged in settlement discussions. But Plaintiffs consented to that abeyance, R.114, and raised no objection its continuance at the status conference, Ex. 3, Tr. of Status Conf. (Sept. 13, 2018). They have therefore forfeited any challenge to it. *See Chichakli v. Tillerson*, 882 F.3d

229, 234 (D.C. Cir. 2018) (argument not raised below was forfeited for purposes of appeal).

Plaintiffs' certificate also indicates that they appeal oral rulings by the district court at status conferences on September 6, 2019, and December 19, 2019, as well as a follow-up written order dated December 20, 2021. But those orders, respectively, simply denied without prejudice the same pending motions (after they had been taken out of abeyance and fully briefed) during new settlement discussions and then reinstated them when settlement discussions were not successful. R.135; R.145. Again, Plaintiffs raised no objection to this maneuver and therefore forfeited it. *See Chickakli*, 882 F.3d at 234.

In any event, the district court's decision to pause proceedings while the parties discussed settlement—first through an abeyance and later through a nonprejudicial denial—were well within its broad discretion to manage its docket. *See Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150, 151 (D.C. Cir. 1996). The Court should therefore summarily affirm those orders.

Finally, Plaintiffs purport to appeal the district court's June 25, 2021, order dismissing the amended complaint as moot. Plaintiffs,

however, had filed a notice with the district court explicitly acknowledging that "the amended complaint is moot and should be dismissed by the Court." R.172 at 1. Given this concession, Plaintiffs have forfeited their right to argue otherwise on appeal. *See Chickakli*, 882 F.3d at 234.

## CONCLUSION

For the foregoing reasons, the Court should affirm the orders of the district court denying class certification.

Dated: September 30, 2021
   Washington, D.C.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney

R. CRAIG LAWRENCE
Assistant United States Attorney

By: /s/ Johnny Walker
JOHNNY H. WALKER, III
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
Tel.: (202) 252-2575
Email: johnny.walker@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on September 30, 2021, I caused a copy of this motion for summary affirmance to be served on Appellant by mailing it to the following address

      /s/ Johnny Walker
JOHNNY H. WALKER, III
Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE

I certify that this motion complies with Federal Rule of Appellate Procedure 27(d)(1) because it has been prepared in 14-point Century, a proportionally spaced font. I further certify that it complies with Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 4,818 words according to the count of Microsoft Word.

      /s/ Johnny Walker
JOHNNY H. WALKER, III
Assistant United States Attorney